Christopher D. Moon (State Bar No. 246622)
*chris@moonlawapc.com*
Kevin O. Moon (State Bar No. 246792)
*kevin@moonlawapc.com*
**MOON LAW APC**
600 West Broadway, Suite 700
San Diego, California 92101
Telephone: (619) 915-9432
Facsimile: (650) 542-8432

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TODD CARPENTER, Individually, on behalf of himself and others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>PETSMART, INC.,<br><br>          Defendant. | Case No.: **'19 CV 1731 CAB LL**<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Todd Carpenter, individually and on behalf of a class of persons similarly situated, as more fully described herein (the "Class" and "Class Members"), brings this class action against Defendant PetSmart, Inc. ("PetSmart" or "Defendant"). Plaintiff's allegations herein are based upon personal knowledge as to his own acts and experiences in this matter, the investigation of counsel, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      This is a class action against Defendant for the design, manufacture and sale of its All Living Things® Tiny Tales™ Small Pet Habitats (hereinafter, "Tiny Tales Homes"), which are artificial habitats or cages for pet hamsters, gerbils, and mice. Despite Defendant's self-proclaimed expertise concerning pets and pet care, the Tiny Tales Homes contain a critical defect, which renders them unsafe and dangerous to the very animals they are intended to house safely and securely. As a result, the Tiny Tales Homes are worthless.

2.      Accordingly, Plaintiff brings his claims against Defendant individually and on behalf of the Class for (1) violation of California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.* and California Commercial Code § 2314; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; (3) violation of California's Consumer Legal Remedies Act, Civil Code § 1750, *et. seq.*; (4) fraud by omission; (5) breach of implied warranty; (6) violation of the Magnuson-Moss Warranty Act; and (7) unjust enrichment.

## JURISDICTION

3.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This

Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

4.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  In addition, Plaintiff purchased the Tiny Tales Homes in this District, and Defendant has marketed, advertised, and sold Tiny Tales Homes within this District.[1]

## PARTIES

### A.     Plaintiff

5.     Plaintiff Todd Carpenter is a resident of Encinitas, California.   On December 24, 2018, Plaintiff purchased four Tiny Tales Homes (one Rocket Ship, one Castle, and two Clubhouse units) and two pet hamsters (including bedding and food) from Defendant as Christmas presents for his children.  Plaintiff purchased these items at a PetSmart store located in Encinitas, California.   Plaintiff paid $111.80 to purchase these items.

### B.     Defendant

6.     Defendant PetSmart, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Phoenix, Arizona.

7.     Plaintiff alleges, on information and belief, that at all times herein, Defendant's agents, employees, representatives, executives, directors, partners, and/or subsidiaries were acting within the course and scope of such agency, employment, and representation, on behalf of Defendant.

## FACTUAL ALLEGATIONS

8.     Defendant PetSmart, Inc. "is the largest specialty pet retailer of

---

[1] *See also* Declaration of Todd Carpenter Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), appended hereto as Exhibit A.

services and solutions for the lifetime needs of pets."[2]   Defendant employs approximately 56,000 "associates" and operates more than 1,650 pet stores throughout the United States, Canada, and Puerto Rico.

9.      In addition, "PetSmart provides a broad range of competitively priced pet food and products and offers unique pet services including training, pet grooming, boarding, PetSmart Doggie Day Camp and in-store pet adoptions."[3] Many of Defendant's stores also provide full-service, in-store pet hospitals offering expert veterinarian care.

10.      Defendant also sells "Live Pets," including hamsters, gerbils, and mice, in addition to other animals.  In fact, on information and belief, Defendant sells tens of thousands—if not more—of hamsters, gerbils and mice (hereinafter, "Rodents") every year.

11.      Defendant has sold Rodents for decades.

A.      **Defendant Touts Its Expertise Concerning Pets and Pet Care**

12.      Defendant claims to be "an industry leader when it comes to caring for pets. We play a critical role in ensuring top-quality care that the pets in our stores receive, even before they reach our stores. And we continue to help with the care of these pets well after they reach their new home."[4]

13.      Similarly, Defendant claims to "provide superior care for the pets in our stores, and always are available to help our pet parents with any concerns about their pet."[5]   Indeed, Defendant purports to be "a trusted resource for those pet parents who want to purchase a healthy pet."[6]

---

[2] https://www.petsmartcorporate.com/.
[3] *Id.*
[4] http://media.corporate-ir.net/media_files/irol/19/196265/Vet_Assured.pdf.
[5] *Id.*
[6] *Id.*

14.    In fact, "[e]ach and every [PetSmart] associate must complete education and training programs, and know how to provide the highest standards of care for pets in our stores, every moment of every day."[7]

15.    Further, Defendant claims it is "constantly conducting research, working with experts and listening to feedback from our customers to determine ways in which [it] can improve or change [its] practices, all in the best interest of pets."[8]

## B.    Defendant's Vet Assured Promise

16.    With respect to the pets it sells, including Rodents, Defendant provides its "Vet Assured Promise." "Vet Assured is PetSmart's exclusive program of health care for all of the small pets, birds, reptiles and amphibians available for sale in our stores. Developed in 1997 by our inhouse team of veterinarians and pet experts, it is a comprehensive veterinarian-supervised care program that includes setting standards for and monitoring the breeding, care and transportation practices and policies of PetSmart's pet suppliers, conducting examinations by our trained associates of all pets before they are offered for sale, and providing expert care to the pets while in stores."[9]

17.    Moreover, "[i]f a pet should become ill while in PetSmart's care, all Pet Care Associates are trained to handle the situation, including isolating the pet in a designated area, consulting a veterinarian and providing medication under the direction of a veterinarian. . . . Each PetSmart store has a consulting veterinarian to refer to with pet health concerns. The store utilizes the services of that veterinarian for the care of any pets that become ill or injured in the store, as needed. The Pet Care Manager at the store can also consult with the PetSmart Veterinary staff."[10]

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

C.    **The Defective Products**

18.    In addition to selling pets, Defendant sells pet cages or "habitats."

19.    Defendant designs, manufactures, markets, advertises, labels, and sells Tiny Tales Homes, including, but not limited to, the following:

- Comfy House;
- Country Barn;
- Barn Silo;
- Rocket Ship;
- Amusement Park;
- Castle;
- Castle Turret;
- Race Car;
- Clubhouse; and
- Playground

*See* the following images of Tiny Tales Homes:

**Image of Comfy House**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Image of Country Barn



## Image of Barn Silo



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Image of Rocket Ship



## Image of Amusement Park



-8-
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Image of Castle**



## **Image of Castle Turret**



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Image of Race Car**



**Image of Clubhouse**



**Image of Playground**



20.     The Tiny Tales Homes are designed, manufactured, marketed, advertised, labeled, and sold as artificial habitats for Rodents.

21.     The Tiny Tales Homes include, in various sizes and colors, cylindrical plastic tubes (hereinafter, "Transport Tubes") that permit a Rodent to explore the space within a Tiny Tales Home, as well as permit different Tiny Tales Homes to be connected to one another to create a larger habitat.

22.     In fact, Defendant specifically designed and manufactured Tiny Tales Homes to be connected to one another.  On the packaging of each Tiny Tales Home (which Defendant labels as "Connectable Hamster Home[s]"), Defendant encourages consumers to "Collect and connect each Tiny Tales™ home to build an exciting world[,]" as well as to "Collect & Connect Them All!"

23. To facilitate the connections, the Transport Tubes use circular connection pieces made of soft, malleable plastic (hereinafter, "Connectors"). The Connectors attach the Transport Tubes to a Tiny Tales Home.



**Connectors**

**Transport Tubes**

### D.    Rodents' Chewing Behavior

24.    Rodents must vigorously and frequently chew objects in order to shorten their front four teeth (or incisors), which grow continuously throughout their lives.  By failing to do so, a Rodent risks severe injury or death, as its incisors could eventually pierce its skull.

25.    Rodents also engage in this frequent chewing behavior due to boredom, anxiety, and idleness.

26.    In fact, the name "rodent" comes from the Latin word "rodere," which means "to gnaw."

27.    Not only do Rodents' incisors never stop growing, they are also very hard.  Indeed, Rodent teeth are harder than lead, aluminum, copper, and iron.  As a result, Rodents are able to chew through a variety of materials, including plastic—especially soft plastic.

### E.    The Defect

28.    As described herein, the Transport Tubes use soft, malleable plastic Connectors to attach the Transport Tubes to a Tiny Tales Home.

29.    As depicted in the images of the different Tiny Tales Homes, *supra,* these Transport Tubes connect to the Tiny Tales Homes in various ways and in various configurations.

30.    However, when a Transport Tube is connected to a Tiny Tales Home, a portion of the soft, plastic Connector protrudes outward, creating an exposed lip within the Tiny Tales Home.

///

///

///

///

///

///

CLASS ACTION COMPLAINT

31.   That a portion of the soft, malleable plastic Connector protrudes in this way is a critical defect, rendering the Tiny Tales Homes worthless—and dangerous.

32.   That is because Rodents are prone to chewing the exposed, protruding portion of a Connector, which Rodents can—and do—easily chew through.   In fact, Rodents are prone to chewing the Connector until it no longer functions properly and fails to connect the Transport Tube to the Tiny Tales Home.  This, in turn, causes the Transport Tube to become dislodged from the Tiny Tales Home, creating an opening and permitting a Rodent to escape.

33.     Accordingly, the defect—which can permit a hamster to escape—is an unreasonable safety hazard, as domesticated Rodents, such as those sold by Defendant, are ill-equipped to survive outside of their Tiny Tales Home.

34.     In addition, were a Rodent to ingest any of the plastic Connector, the Rodent could become sick or injured, or could be killed.

**An Example of a Connector Chewed by a Rodent**



F.     **Plaintiff's Experience with the Defective Products**

35.     As previously described, Plaintiff Todd Carpenter purchased four Tiny Tales Homes as Christmas presents for his children.  Using the defective Connectors and Transport Tubes, Mr. Carpenter connected two of the Tiny Tales Homes together to form a larger habitat.  Mr. Carpenter connected the other two Tiny Tales Homes together in the same way.

36.     Mr. Carpenter then placed one hamster in each of the two sets of connected Tiny Tales Homes.

37.     To the utter horror of Mr. Carpenter and his children, their pet hamsters—while housed in entirely separate sets of connected Tiny Tales

Homes—independently chewed apart numerous defective Connectors, causing the Transport Tubes to fail and become dislodged, thereby permitting the hamsters to escape.

38. The hamsters were never found.

39. Mr. Carpenter's children were completely devastated and deeply saddened by these events.

## G. **Defendant Knew About the Defect**

40. As a self-proclaimed expert in the area of pets and pet care, and having sold tens of thousands of Rodents over the years, Defendant knew about the Rodent chewing behavior described herein.

41. In fact, on its website, Defendant provides information concerning Rodent care. Defendant states that hamsters, gerbils, and mice "have front teeth that never stop growing -- so they need lots of healthy things to chew on[.]"[11]

42. Similarly, Defendant states that "Hamsters like to chew, gnaw and gnash. Choose a habitat with a solid bottom or go for a glass aquarium tank with a well-ventilated wire mesh top."[12] And "Rodents love to gnaw."[13]

43. Defendant sold and sells the All Living Things Tiny Tales Wooden Slide Chew, which is a chew toy made of wood and intended for "Small Pets," including Rodents.[14] In describing the product, Defendant states, "Encourage your pet's natural desire to chew by adding this All Living Things Tiny Tales Wooden

---

[11]https://www.petsmart.com/small-pet/live-small-pets/hamsters-guinea-pigs-and-more/fancy-mouse-15334.html; https://www.petsmart.com/small-pet/live-small-pets/hamsters-guinea-pigs-and-more/russian-dwarf-hamster-43112.html; https://www.petsmart.com/small-pet/live-small-pets/hamsters-guinea-pigs-and-more/gerbil-15333.html.
[12]https://www.petsmart.com/learning-center/small-pet-care/hamster-care-guide/A0092.html.
[13]https://www.petsmart.com/learning-center/small-pet-care/feeding-your-small-pet/A0024.html.
[14]https://www.petsmart.ca/small-pet/toys-and-habitat-accessories/toys/all-living-things-tiny-talesandtrade-slide-small-pet-chew-5282294.html.

Slide Chew to his habitat. This fun chew comes in beautiful blue and is shaped like a fun slide, and is the perfect piece to satisfy your pet's instinctive chewing urges."[15]

44.     However, in October 2018, Defendant recalled the Tiny Tales Wooden Slide because "[t]he products were constructed using small metal brads which could cause injury if the pet chews through the product and exposes the metal."[16]

45.     Further—and ironically—Defendant cautions consumers to "[m]ake sure your pet's habitat is escape proof."[17]   Accordingly and unequivocally, Defendant was and is aware of the Rodent chewing behavior described herein, including prior to Plaintiff's purchase of the Tiny Tales Homes.

46.     In addition, and in light of the following (also described *supra*), Defendant knew—including prior to Plaintiff's purchase of the Tiny Tales Homes—that Rodents can chew through soft plastic—and are prone to doing so:

a.   Defendant is "an industry leader when it comes to caring for pets";

b.   Defendant is "a trusted resource for those pet parents who want to purchase a healthy pet";

c.   Defendant has "in-store pet hospitals offering expert veterinarian care";

d.   Defendant sells tens of thousands—if not more—of Rodents every year[18];

e.   Defendant has sold Rodents for decades;

---

[15] *Id.*

[16]https://www.petsmartcorporate.com/blank-1/2018/10/31/Voluntary-Product-Withdrawal-%E2%80%93-Tiny-Tales-Small-Animal-Chews.

[17]https://www.petsmart.com/learning-center/small-pet-care/what-kind-of-small-pet-should-i-get/A0047.html.

[18] The Rodents Defendant sells are housed and maintained in Defendant's stores by Defendant's employees.   Having housed and maintained Rodents for decades, Defendant was aware of Rodents' chewing behavior, including their ability and propensity to chew through soft plastic material.

f. "Each and every [PetSmart] associate must complete education and training programs, and know how to provide the highest standards of care for pets in our stores, every moment of every day";

g. Defendant has an "inhouse team of veterinarians and pet experts"[19];

h. "Each PetSmart store has a consulting veterinarian to refer to with pet health concerns. The store utilizes the services of that veterinarian for the care of any pets that become ill or injured in the store, as needed. The Pet Care Manager at the store can also consult with the PetSmart Veterinary staff";

i. Defendant's "comprehensive veterinarian-supervised care program that includes setting standards for and monitoring the breeding, care and transportation practices and policies . . . . [and] providing expert care to the pets while in stores"; and

j. Defendant is "constantly conducting research, working with experts and listening to feedback from our customers to determine ways in which [it] can improve or change [its] practices, all in the best interest of pets."

47.     In addition, as the designer and manufacturer of Tiny Tales Homes, Defendant knew or should have known that if a Rodent chewed through the soft plastic Connectors, the Transport Tubes would fail and become dislodged, permitting the Rodent to escape.

48.     Defendant had exclusive, non-public knowledge of the defect contained in the Tiny Tales Homes.  As the designer, manufacturer, marketer and seller of the Tiny Tales Homes, Defendant alone possessed specialized knowledge about the design and manufacturing process and was in a superior position to know and learn of the Defect.

---

[19] Rodents' chewing behavior, including their ability and propensity to chew through soft plastic material, was known to Defendant's inhouse team of veterinarians and pet experts, including prior to Plaintiff's purchase of the Tiny Tales Homes.

49. On information and belief, Defendant also knew or should have known about the defect through sources not available to consumers including, but not limited to, product specifications, design drawings, return-rate data, testing data, manufacturer inspection, oversight of the manufacturing process, early consumer complaints about the defect to Defendant, and Defendant's testing or investigation conducted in response to those early complaints, return and exchange data from customer service, among other internal sources of aggregate information about the problem.

50. Defendant also knew that were a Rodent to ingest any of the plastic Connector, the Rodent could become sick or injured, or could be killed.

51. In fact, Defendant was clearly cognizant of the harm caused to pets that ingest plastic. For example, on its website, Defendant recommends that dog owners "[a]void toys made of material that's easily chewed apart and swallowed, such as hard plastic or rubber."[20] Similarly, "Cellophane, plastic & paper sticks can cause gastrointestinal upset or bowel obstruction."[21]

52. Surprisingly, Defendant designed and manufactured the Connectors to be made of soft plastic despite leading animal organizations warning against the danger that soft plastic poses to Rodents.[22]

53. For example, the Animal Humane Society ("AHS") is one of the nation's leading animal welfare organizations, with the mission of advancing animal welfare and creating a more humane world for animals. The AHS provides recommendations concerning pet care, including caring for hamsters, gerbils, and mice. The AHS instructs that hamsters, gerbils, and mice "need to chew to keep

---

[20]https://www.petsmart.com/learning-center/dog-care/is-my-pet-stressed/A0227.html.
[21]https://www.petsmart.com/learning-center/dog-care/halloween-food-and-decoration-safety-guide-for-pets/A0254.html.
[22] In fact, Defendant regularly donates money to and partners with the ASPCA and HSUS in connection with various charitable-related causes.

their teeth from overgrowing[,]" but a pet owner should "[a]void anything made of soft plastic."

54.    The American Society for the Prevention of Cruelty to Animals ("ASPCA") is the oldest humane society in North American and is currently one of the largest in the world. The ASPCA also provides recommendations concerning pet care, including caring for gerbils.  The ASPCA cautions that, while gerbils love toys, "avoid anything made of soft plastic—it will almost certainly be chewed to bits!"

55.    The Humane Society of the United States ("HSUS") is a nonprofit animal welfare and animal rights advocacy group, and is one of the largest such organizations in the world, with more than 10 million members.   Noting that hamsters are "[n]otorious nibblers," the HSUS warns that "hamsters may harm their internal systems if they ingest soft plastics[.]"

56.    Even more, consumers of the Tiny Tales Homes have complained directly to Defendant about the defect.   For example, through its website, Defendant not only sells the Tiny Tales Homes, but permits consumers to leave a review of the Tiny Tales Homes.

57.    On information and belief, Defendant actively monitors these reviews.

58.    The following are consumer reviews of various Tiny Tales Homes on Defendant's website:[23]

 a.  From Lucasless13:

"I got this for my sons hamster about a week ago.  It's waaaayyyy too small for any hamster….***The tubing is made of plastic and it connects to the cage with plastic ends. They are already chewed through***…."

 b.  From Hamsterlovespie:

---

[23] Regarding the listed reviews: grammatically unchanged; emphasis added.

"My hamster hated it.  He had to stay in there for a while we buy a new cage but he escaped. . . . ***But all he did was chew a little on the tubes then he popped them out of his cage and escaped***.  I would never recommend EVER."

c.  From Astrothebunny:

"DO NOT BUY THIS! This cage and all cages from this brand are wayyy too small for hamsters, mice, and gerbils! ***It is also made of a soft plastic material which they can easily chew through and escape….***"

d.  From Prima_Sirius_Pax:

***"I agree with wowgirl, gerbils will in fact chew on plastic, and this can be unhealthy. Not only that, but your gerbils could get out and be lost in your home."***

e.  From FischerNordica:

"The plastic is cheap and breaks easily.  A hamster or gerbil can easily escape.  Plus this is way too small for rodents in general."

59.    Further, that Defendant knew about the defect was confirmed by Plaintiff after his hamsters chewed through the Connectors and escaped.  Plaintiff spoke with two different PetSmart employees at two different PetSmart stores. Each employee confirmed that it is a known, common issue that Rodents chew through the Connectors in the Tiny Tales Homes.

**H.    As a Result of the Defect, Plaintiff and Class Members Were Damaged and Suffered an Ascertainable Loss**

60.    Despite its knowledge, Defendant failed to warn, or otherwise disclose to, consumers that the Tiny Tales Homes are defective.

61.    Defendant also fraudulently concealed and intentionally failed to disclose the defective nature of the Tiny Tales Homes.

62.    Nor has Defendant issued a recall of the Tiny Tales Homes due to the defect.

63.    The defect in the Tiny Tales Homes would not be discoverable by a reasonable consumer prior to sale.  The Rodent chewing behavior described herein, the soft plastic material of which a Connector is made, and that a portion of a Connector protrudes in the way described herein—and that they constitute a material defect—are not facts a reasonable consumer would know (or reasonably be expected to know) prior to purchasing the Tiny Tales Homes.

64.    Moreover, Plaintiff and Class Members would not expect Defendant to design, manufacture, and sell a product that contains a material defect.

65.    That a Tiny Tales Home securely and safely houses a Rodent is the central function of the Tiny Tales Homes, as well as a material factor to Class Members, including Plaintiff, in purchasing a Tiny Tales Home.

66.    The defect, which Defendant fails to disclose and actively conceals from consumers, directly undermines and impairs a Tiny Tales Home's ability to securely and safely house a Rodent.

67.    In light of the defect, the Tiny Tales Homes are unfit to be sold or used to house Rodents.  These products are, therefore, completely worthless.

68.    Defendant had a duty to disclose the existence of this defect to Plaintiff and Class Members but failed to do so.  This is especially true where, as here, Defendant had exclusive knowledge of the defect and was in a superior position to know the truth about the quality and nature of the Tiny Tales Homes.

69.    Had Class Members, including Plaintiff, known about the defect, they would not have purchased the Tiny Tales Homes, or would have paid less for them.  As such, the defect, which Defendant has failed to disclose, constitutes information that Plaintiff and Class Members would have deemed important in determining whether to purchase the Tiny Tales Homes.

70.    Having purchased the Tiny Tales Homes at one of Defendant's stores, Plaintiff would have had an opportunity to receive information about the defect, had Defendant disclosed it.

71.     Consequently, in purchasing the Tiny Tales Homes, Plaintiff and Class Members have suffered an injury in fact, an ascertainable loss, and did not receive the benefit of their bargain.

72.     Defendant has made an illegal profit, which should be disgorged and returned to Plaintiff and Class Members.

73.     It is possible, however, that Plaintiff would purchase a Tiny Tales Home in the future if the product was no longer defective.

## CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as a member of the Classes defined as follows:

> All citizens of the United States who, within the relevant statute of limitations periods, purchased Defendant's Tiny Tales Homes ("Nationwide Class");

> All citizens of California who, within four years prior to the filing of this Complaint, purchased Defendant's Tiny Tales Homes ("California Subclass").

("Nationwide Class" and "California Subclass," collectively, "the Class").

75.     Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

76.     Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

77.   This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

78.   **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

79.   **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

a.  Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling its Tiny Tales Homes;

b.  Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code § 17500, *et seq.*; and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

c.  Whether Defendant's conduct constitutes breach of the implied warranty of merchantability;

d.  Whether the Tiny Tales Homes are defective in manufacturing and/or design;

e.  Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f.  Whether Plaintiff and the Class have sustained damages as a result of Defendant's unlawful conduct;

g.  The proper measure of damages sustained by Plaintiff and Class Members; and

h.  Whether Defendant was unjustly enriched by its unlawful conduct.

80.   **Typicality**:  Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendant's defective Tiny Tales Homes.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  The defect inherent to the Tiny Tales Homes Plaintiff purchased is identical to those Tiny Tales Homes purchased by Class Members.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

81.   **Adequacy**: Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent.  Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

82.   **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.  The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.  Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.  Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members

have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

83.    Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

84.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

85.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## <u>COUNT I</u>

**Breach of Implied Warranty Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* and California Commercial Code § 2314 (On Behalf of the California Subclass)**

86.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

87.    Plaintiff brings this claim individually and on behalf of the California Subclass.

88.   Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, and California Commercial Code § 2314, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.   In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose (here, to house Rodents) and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

89.   The Tiny Tales Homes at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

90.   Plaintiff and California Subclass Members who purchased one or more of the Tiny Tales Homes are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

91.   Defendant is in the business of manufacturing, assembling, producing and/or selling the Tiny Tales Homes to retail buyers, and therefore is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

92.   Defendant impliedly warranted to retail buyers that the Tiny Tales Homes were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Tiny Tales Homes are used.   In order for a consumer good to be "merchantable" under the Act, it must satisfy both of these elements. Defendant breached these implied warranties because the Tiny Tales Homes were unsafe and defective.   Therefore, the Tiny Tales Homes would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

93.   Defendant was in vertical privity with Plaintiff and California Subclass Members because it sells its products directly to consumers in its PetSmart stores and on the PetSmart website.

94.   Plaintiff and California Subclass Members purchased the Tiny Tales Homes in reliance upon Defendant's skill and judgment to furnish suitable goods.

95.   The Tiny Tales Homes were not altered by Plaintiff or California Subclass Members.

96.   The Tiny Tales Homes were defective at the time of sale when they left the exclusive control of Defendant. The defect described in this Complaint was latent in the product and not discoverable at the time of sale.

97.   Defendant knew that the Tiny Tales Homes would be purchased and used without additional testing by Plaintiff and California Subclass Members.

98.   As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and California Subclass Members have been injured and harmed because they would not have purchased the Tiny Tales Homes if they knew the truth about the products, namely, that they were unfit to house Rodents.

99.   Plaintiff seeks the civil penalties described in Civil Code §1794(c), including a penalty up to two times the amount of Plaintiff's actual damages.

## <u>COUNT II</u>

### California's Unfair Competition Law ("UCL")
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)
### (On Behalf of the California Subclass)

100.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

101.   Plaintiff brings this claim individually and on behalf of the California Subclass.

102.   The UCL prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

103.   In the course of conducting business, Defendant committed "unlawful" business practices by, *inter alia,* omitting material facts, as set forth more fully herein, and violating state, federal, and common law.

104.   Plaintiff, individually and on behalf of other members of the California Subclass, reserves the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

105.   Defendant's actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant omitted material facts regarding the Tiny Tales Homes, and thereby offends an established public policy, and engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.  This conduct constitutes violations of the unfair prong of the UCL.

106.   In addition, Defendant's conduct constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

107.   In addition, Defendant's conduct was, and continues to be, unfair, in that its injury to countless purchasers of the Tiny Tales Homes is substantial, and is not outweighed by any countervailing benefits to consumers or to competitors.

108.   Moreover, Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Defendant's uniform, material omissions regarding the Tiny Tales Homes were likely to deceive.

109.   The UCL also prohibits any "fraudulent business act or practice."

110.   Defendant's actions and nondisclosures, as alleged in this Complaint, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they omit material facts regarding the Tiny Tales Homes.

111.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

112.   As a result of Defendant's omissions as detailed in this Complaint, Plaintiff and other members of the California Subclass have in fact been harmed as described above.   If Defendant had disclosed the information discussed above about the Tiny Tales Homes, Plaintiff would not have purchased the Tiny Tales Homes.

113.   Defendant was also able to charge more than what the Tiny Tales Homes would have been worth had Defendant disclosed the truth about them.

114.   As a result of Defendant's unlawful, unfair, and fraudulent practices, Plaintiff and the other members of the California Subclass have suffered injury in fact and lost money.

115.   Defendant has also been able to reap unjust revenue and profit in violation of the UCL.

116.   Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct.   Accordingly, injunctive relief is appropriate for Plaintiff and the members of the California Subclass.

117.   As a result of Defendant's conduct in violation of the UCL, Plaintiff and members of the California Subclass have been injured as alleged herein in amounts to be proven at trial because they purchased the Tiny Tales Homes without full disclosure of the material facts discussed above.

118.   In addition, Plaintiff, individually and on behalf of the California Subclass, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the California Subclass collected by Defendant as a result of its unlawful, unfair, and/or fraudulent conduct, and seeks

injunctive relief and restitution, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

119.    Pursuant to Civil Code § 3287(a), Plaintiff and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Subclass are entitled to interest in an amount according to proof.

## COUNT III

**California Legal Remedies Act ("CLRA")**
**(Cal. Civil Code § 1750, *et seq.*)**
**(On Behalf of the California Subclass)**

120.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

121.    Plaintiff brings this claim individually and on behalf of the California Subclass.

122.    Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

123.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

124.    The Tiny Tales Homes are "goods," as defined by the CLRA in California Civil Code §1761(a).

125.    Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

126.    Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

127.   Purchase of the Tiny Tales Homes by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

128.   Defendant violated sections 1770(a)(5), 1770(a)(7), and 1770(a)(9) by failing to disclose material facts to Plaintiff and members of the California Subclass, including that the Tiny Tales Homes were defective.

129.   Defendant's uniform, material omissions regarding the Tiny Tales Homes were likely to deceive, and Defendant knew or should have known that its omissions were deceptive.

130.   Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of facts that Defendant suppressed and failed to disclose; and, Plaintiff and members of the California Subclass would not have purchased the Tiny Tales Homes and/or would have purchased them on different terms had they known the truth.

131.   Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct. Such injury includes, but is not limited to, the purchase price of the Tiny Tales Homes and/or the price of the Tiny Tales Homes at the prices at which they were offered.

132.   Given that Defendant's conduct violated § 1770(a)(5), Plaintiff and members of the California Subclass are entitled to seek and do seek injunctive relief to put an end to Defendant's violations of the CLRA.

133.   Moreover, Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally withheld material information from consumers to increase the sale of the Tiny Tales Homes.

134.   Pursuant to California Civil Code § 1782(a), Plaintiff on his own behalf, and on behalf of members of the California Subclass, notified Defendant of the alleged violations of the Consumer Legal Remedies Act.   Despite giving

Defendant well over 30-days from the date of the notification letter to provide appropriate relief for violations of the CLRA, Defendant has failed to provide any such relief.  As such, Plaintiff also seeks compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money that may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

135.  Plaintiff further requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

## <u>COUNT IV</u>

### Fraud by Omission
### (On Behalf of the Nationwide Class and California Subclass)

136.  Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

137.  Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

138.  This claim is based on fraudulent omissions concerning the Tiny Tales Homes.

139.  As discussed herein, Defendant failed to disclose that the Tiny Tales Homes had a material defect that directly undermined and impaired the Tiny Tales Homes' ability to safely and securely house Rodents.

140.  The false and misleading omissions were made with knowledge of their falsehood.

141.  Defendant knew of the Tiny Tales Homes' defective nature.

142. Nonetheless, Defendant continued to sell its worthless Tiny Tales Homes to unsuspecting consumers.

143. The false and misleading omissions were made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class Members to purchase the Tiny Tales Homes.

144. The fraudulent actions of Defendant caused damage to Plaintiff and Class Members, who are entitled to damages.

## <u>COUNT V</u>

### Breach of Implied Warranty
### (On Behalf of the Nationwide Class and California Subclass)

145. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

146. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

147. Plaintiff purchased the Tiny Tales Homes from Defendant's store, located in the United States.

148. At the time of sale, and currently, Defendant is in the business of manufacturing, distributing and selling the Tiny Tales Homes.

149. Defendant impliedly warranted that the Tiny Tales Homes were of good and merchantable quality – fit for their ordinary intended use.

150. Defendant knowingly and/or recklessly sold a defective product without conspicuously informing consumers about the defect contained in the Tiny Tales Homes manufactured, distributed and/or sold by Defendant throughout the United States. Defendant possessed actual, superior knowledge of the defect in the Tiny Tales Homes, as described herein.

151.   Plaintiff and Class Members' Tiny Tales Homes became unfit for their ordinary purpose of housing Rodents within the implied warranty period.

152.   The defect contained in the Tiny Tales Homes existed when the Tiny Tales Homes left Defendant's possession, and the defect renders the Tiny Tales Homes unfit for their intended use and purpose.

153.   As a direct and proximate result of Defendant's breach of its implied warranty, Plaintiff and the Class have sustained damages and other losses in an amount to be determined at trial. Plaintiff and Class Members are entitled to recover legal and equitable relief against Defendant, including damages, civil penalties, attorneys' fees, litigation costs and other relief provided by law and that the Court deems proper.

## COUNT VI

**Breach of Implied Warranty - Magnuson-Moss Warranty Act**
**(On Behalf of the Nationwide Class and California Subclass)**

154.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

155.   Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

156.   The Tiny Tales Homes are "consumer products" within the meaning of 15 U.S.C. § 2301.

157.   Plaintiff and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

158.   Defendant is a "supplier" of consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

159.   15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiff properly invokes jurisdiction under the Class Action Fairness Act.

160.   Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

161.   Defendant made implied warranties regarding the Tiny Tales Homes to Plaintiff and Class Members within the meaning of 15 U.S.C. § 2301. Defendant provided Plaintiff and other Class Members with an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

162.   Defendant breached the implied warranty of merchantability because the Tiny Tales Homes were not fit for the ordinary purpose in which such goods are used.   Specifically, the Tiny Tale Homes contained one or more defects as described herein, rendering the Tiny Tales Homes unusable for their ordinary purpose.

163.   Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

164.   The amount in controversy of Plaintiff's and Class Members' individual claims meet or exceed the sum or value of $25; a Tiny Tales Home costs more than $5; and the amount in controversy meets or exceeds the sum of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined by this suit.

165.   Plaintiff, individually and on behalf of the other Class Members, seeks all damages permitted by law, including diminution in value of their Tiny Tales Homes in an amount to be proven at trial.

166.   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended)

determined by the Court to have reasonably been incurred by Plaintiff and the other Class Members in connection with the commencement and prosecution of this action.

167. Further, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Defendant's violation of its implied warranties.

## **COUNT VII**

### **Unjust Enrichment**
### **(On Behalf of the Nationwide Class and California Subclass)**

168. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

169. Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

170. By purchasing the Tiny Tales Homes, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Tiny Tales Homes.

171. Defendant had knowledge of such benefits.

172. Defendant appreciated the benefit because, were consumers not to purchase the Tiny Tales Homes, Defendant would not generate revenue from their sales.

173. Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent conduct.

174. Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

# **PRAYER FOR RELIEF**

174.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

      a.  For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Nationwide Class and California Subclass; and naming Plaintiff's attorneys as Class Counsel to represent the Nationwide Class and California Subclass;

      b.  For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

      c.  For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

      d.  For an order requiring Defendant to immediately cease and desist from selling its unlawful Tiny Tales Homes in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Tiny Tales Homes in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

      e.  For an order awarding attorneys' fees and costs;

      f.  For an order awarding punitive damages;

      g.  For an order awarding pre-and post-judgment interest; and

      h.  For such other and further relief as the Court deems just and proper.

///

///

///

///

///

///

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all causes of action.

Dated: September 10, 2019

Respectfully submitted,

**MOON LAW APC**

By: _____
CHRISTOPHER D. MOON
KEVIN O. MOON
Attorneys for Plaintiff

# EXHIBIT A

1  Christopher D. Moon (State Bar No. 246622)
2  *chris@moonlawapc.com*
   Kevin O. Moon (State Bar No. 246792)
3  *kevin@moonlawapc.com*
4  **MOON LAW APC**
   600 West Broadway, Suite 700
5  San Diego, California 92101
6  Telephone: (619) 915-9432
   Facsimile: (650) 542-8432
7
   *Attorneys for Plaintiff*
8

9             **UNITED STATES DISTRICT COURT**

10          **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  TODD CARPENTER,                          )   Case No.:
    Individually, on behalf of himself and  )
13  others similarly situated,               )   **DECLARATION OF PLAINTIFF**
                                             )   **TODD CARPENTER**
14            Plaintiff,                     )   **REGARDING VENUE**
                                             )   **PURSUANT TO CALIFORNIA**
15       v.                                  )   **CIVIL CODE § 1780(d)**
                                             )
16  PETSMART, INC.,                          )
                                             )
17            Defendant.                     )
                                             )
18                                           )
                                             )
19                                           )
                                             )
20

21

22

23

24

25

26

27

28

VENUE DECLARATION OF PLAINTIFF TODD CARPENTER

I, Todd Carpenter, hereby declare:

1. I am the named-plaintiff and a prospective class member in the above-entitled action.

2. I am an adult, over 18 years old.  I have personal knowledge of the facts stated herein and could competently testify thereto if called upon to do so.

3. I am currently a resident of San Diego County, California.

4. California Civil Code § 1780(d) provides that a plaintiff seeking to bring a claim under section 1780(a) of the California Consumer Legal Remedies Act may commence that action "in the county in which the person against whom it is brought resides, has his or her principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred."

5. I purchased the Tiny Tales Homes at issue in Encinitas, California.

6. Accordingly, the Complaint filed in the above-entitled action, is filed in the proper venue pursuant to California Civil Code § 1780(d).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 9, 2019, in San Diego, California.

TODD CARPENTER