UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD CARPENTER, individually on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PETSMART, INC.,<br><br>Defendant. | Case No.: 19-CV-1731-CAB-LL<br><br>**ORDER GRANTING MOTION TO STRIKE ALLEGATIONS CONCERNING PROPOSED NATIONWIDE CLASS**<br><br>[Doc. No. 12] |

This matter is before the Court on Defendant's motion to strike allegations concerning a putative nationwide class. The motion has been fully briefed, and the Court deems it suitable for submission without oral argument. For the following reasons, the motion is granted.

**I.   Background**

Plaintiff Todd Carpenter alleges that on December 24, 2018, he bought four All Living Things® Tiny Tales™ Small Pet Habitats ("Tiny Tales Homes") at the Encinitas, California store of Defendant PetSmart, Inc. [Doc. No. 4 at ¶ 5.] Tiny Tales Homes are "artificial habitats or cages for pet hamsters, gerbils, and mice." [*Id.* at ¶ 1.] There are a variety of types or models of Tiny Tales Homes, and Carpenter bought one "Rocket Ship," one "Castle," and two "Clubhouse" units. [*Id.* at ¶¶ 5, 19.] The Tiny Tales Homes can be connected to each other using cylindrical plastic tubes ("Transport Tubes") to create a larger habitat of multiple units for the rodent. [*Id.* at ¶¶ 21-22.] These Transport Tubes attach to the Tiny Tales Homes using circular connection pieces made of soft, malleable

1

plastic ("Connectors"). [*Id.* at ¶ 23.] According to the operative First Amended Complaint ("FAC"), the Connectors are defective because rodents meant to be housed in the Tiny Tales Homes can chew through the Connectors until they no longer function, resulting in the Transport Tube detaching and allowing the rodent to escape. [*Id.* at ¶ 32.] The FAC alleges that the PetSmart knew about this defect, and that it renders Tiny Tales Homes worthless. [*Id.* at ¶¶ 1, 46-68.]

Carpenter claims that this defect resulted in the loss of two hamsters he housed in the Tiny Tales Homes. Specifically, the FAC alleges that Carpenter used Connectors and Transport Tubes to form two separate habitats of two Tiny Tales Homes each. [*Id.* at ¶ 40.] He put one hamster in each habitat. At some point, both hamsters allegedly chewed through the Connectors, causing the Transport Tubes to dislodge, and allowing the hamsters to escape, never to be found again. [*Id.* at ¶¶ 41-43.].

The FAC seeks to assert claims on behalf of a nationwide class of Tiny Tales Homes purchasers along with a California subclass. [*Id.* ¶ 83.] It defines the nationwide class as "all citizens of the United States who, within the relevant statute of limitations periods, purchased Defendant's Tiny Tales Homes." [*Id.*] The California class consists of "all citizens of California who, within four years prior to the filing of this Complaint, purchased Defendant's Tiny Tales Homes." [*Id.*] The FAC asserts three claims under California consumer protection laws on behalf of the California subclass, three common law claims for fraud by omission, breach of implied warranty, and unjust enrichment on behalf of both the nationwide class and California subclass, and a claim under the Magnuson-Moss Warranty Act ("MMWA"), on behalf of the nationwide class and California subclass. As for relief, the FAC seeks damages, an injunction prohibiting PetSmart from selling Tiny Tales Homes in the manner it currently does, punitive damages, and attorney's fees and costs.

## II.     Legal Standards

Rule 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ. P. 12(f). "The

purpose of Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Roberts v. Wyndham Int'l, Inc.*, No. 12-CV-5083-PSG, 2012 WL 6001459, at *3 (N.D. Cal. Nov. 30, 2012) (internal quotation marks omitted). In general, however, "striking the pleadings is considered an extreme measure, and Rule 12(f) motions are therefore generally viewed with disfavor and infrequently granted." *Clark v. LG Elec. U.S.A., Inc.*, No. 13-CV-485 JM (JMA), 2013 WL 5816410, at *16 (S.D. Cal. Oct. 29, 2013) (internal quotation marks omitted). At the same time, "Fed.R.Civ.P. 23(d)(1)(D) provides that the court may 'require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.'" *Roberts*, 2012 WL 6001459, at *3. Thus, "the court may strike class allegations if the complaint plainly reflects that a class action cannot be maintained." *Id.*

### III. Discussion

PetSmart moves to strike allegations related to a nationwide class on four grounds: (1) the Court lacks personal jurisdiction over PetSmart with respect to claims by putative class members who purchased Tiny Tales Homes outside of California; (2) Carpenter cannot bring nationwide class claims under California law; (3) Carpenter lacks standing to assert claims under other states' laws; and (4) a nationwide class would be unmanageable. In his opposition, Carpenter states that he "does not seek to apply California substantive law to the claims of unnamed, non-resident class members." [Doc. No. 18 at 23.] Thus, the second ground is moot. As discussed below, the personal jurisdiction and standing arguments are persuasive, so the Court need not address PetSmart's assertion that a nationwide class action would be unmanageable.

### A. Specific Personal Jurisdiction Over PetSmart For Sales of Tiny Tales Homes Outside of California

Although the motion is framed as a motion to strike under Federal Rule of Civil Procedure 12(f), with respect to the contention that the Court lacks personal jurisdiction over non-California class members, the motion is akin to a motion to dismiss any claims

asserted on behalf of the non-California class members for lack of personal jurisdiction under Rule 12(b)(2).[1] "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." *Dole Foods Co. Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). "There are two limitations on a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process." *Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990); *see also In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013) ("Personal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process."). "Under California's long-arm statute, California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (quoting Cal. Civ. Proc. Code Ann. § 410.10 (West 2004)). Thus, "the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-801 (9th Cir. 2004)).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)). This minimum contacts jurisdiction may be either

---

[1] Carpenter argues in his opposition that the Court should reject PetSmart's personal jurisdiction argument as waived because PetSmart stated in its answer that it "does not contest personal jurisdiction." [Doc. No. 11 at 3.] Considering that the instant motion was filed at the same time as the answer, the Court is not persuaded. Although PetSmart's language possibly could have been more precise, in light of the instant motion, it is clear that this statement referred to personal jurisdiction over the claims of Carpenter and purchasers of Tiny Tales Homes in California. Accordingly, the Court does not find any waiver of an argument of lack of personal jurisdiction over claims based on purchases outside of California.

"general or all-purpose jurisdiction," or "specific or case-linked jurisdiction." *Id*. at 919 (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8.9 (1984)). "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015)(citing *Daimler*, 571 U.S. at 137). Here, there does not appear to be any dispute that PetSmart is incorporated in Delaware and has its principal place of business in Arizona. Thus, the Court cannot exercise general personal jurisdiction over PetSmart, and the only issue is whether the Court can exercise specific personal jurisdiction over PetSmart for the claims of unnamed putative class members arising out of sales of Tiny Tales Homes that occurred outside of California.

PetSmart argues that the Court lacks personal jurisdiction over it for claims of unnamed class members arising out of purchases of the Tiny Tales Homes that occurred outside of California based on the Supreme Court's holding in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). In *Bristol-Myers Squibb*, more than 600 plaintiffs, most of whom were not California residents, filed a civil action in California state court alleging a variety of state law claims caused by the drug Plavix. *Id*. at 1777. The California Supreme Court had used a "sliding scale approach to specific jurisdiction." *Id.* at 1778. "Applying this test, the [California Supreme Court] majority concluded that '[Bristol-Myers Squibb's] extensive contacts with California' permitted the exercise of specific jurisdiction 'based on a less direct connection between [Bristol-Myers Squibb's] forum activities and plaintiffs' claims than might otherwise be required.' [] This attenuated requirement was met, the majority found, because the claims of the nonresidents were similar in several ways to the claims of the California residents (as to which specific jurisdiction was uncontested)." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779 (citing *Bristol-Myers Squibb Co. v. Superior Court*, 1 Cal. 5th 783, 803-806 (2016)).

The United States Supreme Court reversed, finding that the "'sliding scale approach' is difficult to square with [its] precedents." *Id.* at 1781. The Court noted that "the

nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* The majority opinion, however, did "not confront the question whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there," *see id.* at 1789, n.4 (Sotomayor, J., dissenting), and "[t]he Ninth Circuit and the Supreme Court [still] have yet to decide this issue." *King v. Bumble Trading, Inc.*, No. 18-CV-06868-NC, 2020 WL 663741, at *4 (N.D. Cal. Feb. 11, 2020). In fact, no circuit court has decided the issue.

District courts have typically taken one of three approaches when asked to consider the application of *Bristol-Myers Squibb* to nationwide class actions:

> First, many courts hold that *Bristol-Myers Squibb* does not apply outside of the context of mass tort cases. Under this view, there is no constitutional unfairness in subjecting a defendant to the class claims of out-of-state plaintiffs in Rule 23 class actions, as long as a court has jurisdiction over the class representative's claims. The due process issue is avoided because Rule 23 class certification already protects a defendant's due process rights.
>
> Another set of district courts holds the opposite: the same due process concerns that animated *Bristol-Myers Squibb* necessarily apply to nationwide class actions in federal courts. They hold there is no principled way to distinguish between the strictures of the Fourteenth Amendment Due Process Clause and the Fifth Amendment Due Process Clause.
>
> A third set of district courts opts to defer this issue until class certification: since unnamed plaintiffs are merely potential class members who may never actually be joined to this action, it would be premature for a court to decide whether there is specific jurisdiction over the defendant(s) with respect to their claims.

*Pettenato v. Beacon Health Options, Inc.*, No. 19CV1646JPOBCM, 2019 WL 5587335, at *6 (S.D.N.Y. Oct. 25, 2019) (citation omitted).

In the Ninth Circuit, district courts have typically followed the first approach. One of the early Ninth Circuit district courts (if not the first) to consider whether *Bristol-Myers Squibb* applies to class actions appears to be *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017). This case essentially held that simply because *Bristol-Myers Squibb* was a mass action and because the Supreme Court did not expressly extend its holding to class actions, the holding in *Bristol-Myers Squibb* did not extend to class actions. *See Fitzhenry-Russell*, 2017 WL 4224723, at *5. Missing from the opinion, however, is any analysis of *why* a class action is so materially different that it warrants a different result than a mass action. Notwithstanding this lack of analysis, dozens of district courts have cited *Fitzhenry-Russell* for this holding. *See, e.g., Cabrera v. Bayer Healthcare, LLC*, No. LACV1708525JAKJPRX, 2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019) (holding that *Bristol-Myers Squibb* does not apply in the class action context and citing to *Fitzhenry-Russell* and other district court cases that reached similar conclusions).

Some of these Ninth Circuit district court cases have provided some additional rationale, primarily stating that the protections of Rule 23 distinguish class actions from the mass action at issue in *Bristol-Myers Squibb*. For example, in *Cabrera*, 2019 WL 1146828, at *8, the court found that "[t]he significant distinctions between a class action and a mass tort action warrant" a finding that *Bristol-Myers Squibb* does not apply to class actions. In particular, the court noted that every plaintiff in a mass action is a real party in interest and that Rule 23 "imposes additional due process safeguards on class actions, *i.e.*, numerosity, commonality, typicality, adequacy of representation, predominance and superiority, that do not exist in the mass tort context." *Id.*

In other jurisdictions, including the Northern District of Illinois and the Northern District of New York, district courts have followed the second approach outlined above, finding that the reasoning in *Bristol-Myers Squibb* also applies to class actions. *See, e.g., Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018) ("The Court therefore concludes that *Bristol-Myers* extends to class actions, and that Chavez is

therefore foreclosed from representing either a nationwide and [sic] multistate class comprising non-Illinois residents in this suit."); *McDonnell v. Nature's Way Prod., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (dismissing all claims arising out of out-of-state purchases "[b]ecause the only connection to [the forum state] is provided by [the named plaintiff's] purchase" of the product); *see also Chizniak v. CertainTeed Corp.*, No. 117CV1075FJSATB, 2020 WL 495129, at *5 (N.D.N.Y. Jan. 30, 2020) ("Like the other courts in this District, the Court interprets *Bristol-Myers Squibb* to extend to nationwide class actions and declines to exercise specific personal jurisdiction over Defendant CertainTeed with regard to the Out-of-State Plaintiffs' claims."); *cf. Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017) (citing *Bristol-Myers Squibb* in a footnote and noting in dicta that the court "lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class.").

This Court agrees with these latter cases finding that *Bristol-Myers Squibb* applies in the nationwide class action context. That the Supreme Court did not consider whether its holding in *Bristol-Myers Squibb* would apply to class actions is hardly supportive of a holding that it does not apply to class actions. On the other hand, the rationale for the holding in *Bristol-Myers Squibb* indicates that if and when the Supreme Court is presented with the question, it will also hold that a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims. *Cf.* "*In re Dental Supplies Antitrust Litig.*, No. 16CIV696BMCGRB, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case.").

"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb*,

137 S. Ct. at 1780. "The specific personal jurisdiction inquiry is 'defendant-focused,' with an emphasis 'on the relationship among the defendant, the forum, and the litigation.'" *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662 (9th Cir. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (*emphasis* in original) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The primary concern in determining whether personal jurisdiction is present, therefore, is "the burden on the defendant." *Bristol-Myers Squibb*, 137 S. Ct. at 1780. This burden "encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in *the claims in question*." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (*emphasis* added). The "claims in question" in this motion are those related to purchases of Tiny Tales Homes that occurred outside of California. California has little interest in the claims of non-California plaintiffs arising out purchases made outside California from a Delaware company with a principal place of business in Arizona. Further, the burden on PetSmart to defend a nationwide class action is significantly greater than the burden of defending an individual claim or a statewide class action. That PetSmart sold some Tiny Tales Homes in California does not create a sufficient relationship between PetSmart and California such that it should be subject to specific personal jurisdiction in California for the claims of a nationwide class with no connection to California.

Using language from *Bristol-Myers Squibb*, "[t]he mere fact that other plaintiffs [purchased the Tiny Tales Homes] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781; *cf. Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Yet, this is exactly what Plaintiff argues here—that because he (and other Californians) purchased the Tiny Tales Homes in California, California may assert specific jurisdiction over nationwide class claims related to out of state purchases.

This argument is unavailing, and the Court respectfully disagrees with courts that have held otherwise.

Courts finding that *Bristol-Myers Squibb* does not apply to nationwide class actions frequently refer to "significant procedural differences between class and mass actions" that they claim address the due process concerns identified in *Bristol-Myers Squibb*. *See King*, 2020 WL 663741, at *4. These courts note, for example, that "class actions are subject to the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Those requirements act as due process safeguards to ensure fairness." *Id.*; *see also Allen v. ConAgra Foods, Inc.,* No. 3:13-CV-01279-WHO, 2018 WL 6460451, at *7 (N.D. Cal. Dec. 10, 2018) (stating that "functional differences set class actions apart; the plaintiffs here must meet the Rule 23 requirements of numerosity, commonality of law or fact, typicality of claims or defenses, and adequacy of representation in order to achieve certification.").

The Court, however, is not persuaded that the procedural requirements for a class action constitute a basis for finding that the rationale behind the holding in *Bristol-Myers Squibb* does not apply to nationwide class actions involving individual claims for which there would not be specific personal jurisdiction if those claims were filed individually. "[T]he class action was an invention of equity to enable [a court] to proceed to a decree in suits where the number of those interested in the litigation was too great to permit joinder. The absent parties would be bound by the decree so long as the named parties adequately represented the absent class and the prosecution of the litigation was within the common interest." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985). In other words, the procedural safeguards of Rule 23 are meant primarily to protect the absent class members and create criteria for binding the absent class members to whatever settlement or judgment results from a class action. *Cf. id.* at 810 (referring to "[t]he concern of the typical class-action rules *for the absent plaintiffs* . . ." and that an absent class-action plaintiff "may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for *his* protection") (*emphasis* added); *Abelson v. Strong*, No. CIV.A. 85-0592-S,

1987 WL 15872, at *9 n.3 (D. Mass. July 30, 1987) ("[T]he absent plaintiffs, and not defendant, are the prime concern of Rules 23(a)(3) and (4)."). That the creation of the class actions and the requirements of Rule 23 are not meant to favor or protect defendants is reflected in the fact that defendants almost always vigorously oppose class certification.

Some courts, including this one, have found that *Bristol-Myers Squibb* applies to the claims of non-resident named plaintiffs in a case involving state-specific classes concerning the same product. *See Andrade-Heymsfield v. Danone US, Inc.,* No. 19-CV-589-CAB-WVG, 2019 WL 3817948, at *3 (S.D. Cal. Aug. 14, 2019); *Reitman v. Champion Petfoods USA, Inc.*, No. CV181736DOCJPRX, 2018 WL 4945645, at *6 (C.D. Cal. Oct. 10, 2018). Whether the individuals who made those out of state purchases are named plaintiffs as part of a mass action, named as representatives for out of state class members, or unnamed members of a putative nationwide class of plaintiffs is a distinction without a difference. It makes little logical sense to allow for broader personal jurisdiction over a defendant when there are fewer named plaintiffs in the case. Moreover, it can hardly be argued that a defendant's due process rights are better served by one in-state plaintiff seeking to represent a nationwide class than by multiple named plaintiffs each seeking to represent a class of other individuals from their particular jurisdiction whose purchases were subject to the same state common law and consumer protection laws. None of these differences warrant a holding other than that the court lacks personal jurisdiction over the defendant with respect to out of state claims regardless of the composition of the named plaintiffs.

This holding that this California court lacks personal jurisdiction over claims based on Tiny Tales Homes purchases made outside of California does not, as Plaintiff argues, "fundamentally alter the existing landscape of class action jurisprudence." [Doc. No. 18 at 15]; *see also Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1038 (C.D. Cal. 2019) ("Extending *Bristol-Myers* to class actions, as Defendant suggests, would radically alter the existing universe of class action law."). Indeed, it would more accurate to say that other courts' holdings that a court has personal jurisdiction over claims where there would

not be personal jurisdiction if the claims were brought individually, for no other reason than that those same claims were brought as part of a class action, would fundamentally alter the existing landscape of personal jurisdiction jurisprudence, including *Bristol-Myers Squibb* itself.

The extension of *Bristol-Myers Squibb* to class actions does not prevent Carpenter from bringing a nationwide class action (at least with respect to the ability to obtain personal jurisdiction over PetSmart); it merely requires that he file it in a jurisdiction where PetSmart is subject to general personal jurisdiction. *Cf. Bristol-Myers Squibb*, 137 S. Ct. at 1783 (noting that the decision did not prevent the filing of mass actions in states that have general jurisdiction over the defendant). That filing a nationwide class action in a different state from where Carpenter lives may be less convenient[2] is not a ground for subjecting a defendant to personal jurisdiction here. *See Walden*, 571 U.S. at 284 ("Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties."). Alternatively, Carpenter could keep his case in California courts by limiting the class to individuals who purchased the Tiny Tales Homes in California. Either way, these requirements would be unlikely to result in a reduction in the number of nationwide class actions. Ultimately, this holding impacts only the forum where a nationwide class action may be filed.

**B.     Carpenter Lacks Standing to Assert Claims Based on Other States' Laws**

Even if the Court had personal jurisdiction over PetSmart for claims based on purchases made outside of California, the nationwide class claims also must be dismissed for lack of standing. "The three well-known irreducible constitutional minima of standing are injury-in-fact, causation, and redressability. A plaintiff bears the burden of

---

[2] In reality, considering that a class representative rarely appears in court in these sorts of class actions, the only ones who would be inconvenienced would be Carpenter's attorneys, who are located in this district.

demonstrating that her injury-in-fact is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (internal quotation marks, citations, and brackets omitted). "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976)).

"[S]tanding is not dispensed in gross." *Id.* at 358 n.6. It "is claim-specific and 'a plaintiff must demonstrate standing for each claim he seeks to press.'" *Harris v. CVS Pharmacy, Inc.*, No. EDCV1302329ABAGRX, 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)); *see also Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014) ("If a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim.") (quoting 5 J. Moore et al., Moore's Federal Practice § 26.63[1][b] at 23–304 (3rd Ed. 2014)). "As the party advocating for the application of [other states' laws], Plaintiff must make at least [a] *prima facie* showing that the [other states' laws] appl[y] to him such that he would have standing to bring that claim." *Harris*, 2015 WL 4694047, at *4. "'Courts routinely dismiss claims' for lack of subject-matter jurisdiction 'where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce' because the named plaintiff lacks standing to invoke the foreign statute." *Id.* (citing *In re Aftermarket Auto. Lighting Products Antitrust Litig.*, No. 09 MDL 2007–GW PJWX, 2009 WL 9502003, at *6 (C.D. Cal. July 6, 2009)).

The Court "should address standing prior to class certification." *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *14 (N.D. Cal. Sept. 1, 2017) (citing *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004)). "Moreover, when

a plaintiff's lack of standing is 'plain enough from the pleadings,' it can form appropriate grounds for dismissal even if it overlaps with issues regarding whether the named plaintiffs are adequate representatives under Rule 23." *Id.* (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Following *Easter,* California district courts frequently address the issue of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products. *See, e.g., Morales v. Unilever U.S., Inc.,* Civ. No. 2:13-2213 WBS EFB, 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014) (holding that because the named plaintiffs were only residents of two states and did not purchase defendant's products in any state but their own they did "not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint.") (quoting *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. May 11, 2007) (holding that "[a]t least one named plaintiff must have standing with respect to each claim the class representative seek to bring" and dismissing the claims made under the laws of twenty-four states where none of the named plaintiffs resided or were alleged to have personally purchased the product).

Here, although the FAC frames the putative classes as a nationwide class and a California subclass, based on Plaintiff's acknowledgement that he "seeks to *represent* unnamed class members pursuing claims under the laws of their respective states" [Doc. No. 18 at 19], there is no nationwide class because there is no claim that governs a nationwide class.[3] Instead, despite the FAC listing only one generic "fraud by omission"

---

[3] Although the MMWA claim can be maintained here so long as the requirements for CAFA jurisdiction are satisfied, *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2009 WL 2969467, at *3 (N.D. Cal. Sept. 14, 2009) ("[B]ecause Plaintiffs allege an alternative basis for jurisdiction under CAFA, the Court has jurisdiction to adjudicate Plaintiffs' Magnuson–Moss Act claim.), without CAFA jurisdiction it cannot be asserted on behalf of a class because there are not over 100 named plaintiffs. *See* 15 U.S.C. § 2310(d)(3)(c); *Pilgrim v. Gen. Motors Co.*, No. CV 15-8047-JFW (EX), 2019 WL 5779892, at *6 (C.D. Cal. Oct. 4, 2019) ("In this case, there are only fifty-seven named Plaintiffs, which is far less than the number required to allege a cognizable MMWA class action claim. Because Plaintiffs have failed to comply with the requirements of the MMWA, the Court must dismiss Plaintiffs' MMWA claim.").

claim, one generic breach of implied warranty claim, and one generic unjust enrichment claim, what Plaintiff is attempting to do here is assert fifty fraud by omission claims, fifty breach on implied warranty claims, and fifty unjust enrichment claims–one of each claim for each state—on behalf of fifty separate state-specific classes. Carpenter, however, does not have standing to assert a claim against PetSmart under any state's law but California's because Carpenter did not suffer any injuries in fact traceable to any alleged violations of any other states' laws. Labeling the putative class as a "nationwide class" does not overcome this fatal deficiency.

Thus, Carpenter is correct that this is not a choice-of-law issue and that a choice of law analysis is unwarranted in this case. To the contrary, there does not appear to be any dispute as to what law applies. Both sides agree that Carpenter's individual claims are governed by California law, and that each unnamed putative class member's claims would be governed by the law of the state in which they made their purchase of a Tiny Tales Home. Many of the cases on which Plaintiff relies (or on which PetSmart relied in its motion before Plaintiff conceded that he is not attempting to apply California law to the entire nationwide class) are distinguishable. Most of those cases concerned a plaintiff seeking to assert claims under California law as to an entire nationwide class. *See, e.g., Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 585 (9th Cir. 2012) ("The complaint states four claims under California Law."); *In re Clorox Consumer Litig.,* 894 F. Supp. 2d 1224, 1230–31 (N.D. Cal. 2012) ("Plaintiffs seek certification of a nationwide class action under California consumer protection statutes on behalf of '[a]ll persons or entities that purchased 'Fresh Step cat litter in the United States.'").[4]

---

[4] To the extent other district courts have declined to dismiss claims asserted under the laws of states that do not govern any of the named plaintiffs for lack of standing, the Court respectfully disagrees with these holdings. For example, in *Kutza v. Williams-Sonoma, Inc.*, No. 18-CV-03534-RS, 2018 WL 5886611, at *3, n.3 (N.D. Cal. Nov. 9, 2018), the Court rejected the defendant's argument that named plaintiff lacked standing to represent a nationwide class under the MMWA and common law, noting that it would "make little difference as to whether Californian [sic] common law is applied to all the claims, or the common law of each state is applied instead." That claims under California law for fraud or breach of implied

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), on which Carpenter also relies, is also distinguishable. As a recent Northern District of California opinion recently explained when faced with a similar standing issue:

> In [*Melendres*], the Ninth Circuit considered an appeal from a district court judgment (following a bench trial) against Sheriff Joseph Arpaio and the Maricopa County Sheriff's Office, enjoining them from making traffic stops based on a car occupant's race. The injunction applied to stops made during "saturation patrol" (when the defendant officers "saturated" a particular area for the purpose of enforcing immigration laws) and "nonsaturation patrol." *Id*. at 1258-59. In support of their request to partially decertify the class, the defendants argued that the remaining named plaintiffs, who were stopped during saturation patrols, lacked Article III standing to bring constitutional claims on behalf of class members stopped during nonsaturation patrols. *Id*.
>
> Unlike the instant case, *Melendres* did not confront a situation where named plaintiffs brought claims under the laws of multiple states where they did not reside and where they were not injured: in *Melendres*, all plaintiffs alleged that they suffered the same constitutional injury, only in different factual circumstances. Here, because Plaintiffs bring claims under the laws of multiple states (some antitrust and some not), Plaintiffs technically invoke different legally protected interests. *See* Restatement (Second) of Torts § 7 cmt. a (1965) (noting that injury involves an actionable invasion of a legally protected interest, while harm denotes personal loss or detriment).
>
> The Court is here called upon to examine whether the named Plaintiffs have standing to bring certain claims, not standing "to obtain relief for unnamed class members" for the same injury. *See id*. at 1261-62; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) (Article III must be measured claim-by-claim). Plaintiffs must show they have standing for each claim they raise, and Plaintiffs do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection. *See Pardini*, 961 F. Supp. 2d at 1061; *see also In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1096–97 (S.D. Cal. 2017) ("*Seafood II*") (discussing Melendres, 784 F.3d at 1261-62). Accordingly, *Melendres* does not, in the

---

warranty, or unjust enrichment may be similar to claims under Arizona (or any other state) law for those common law torts is largely irrelevant to the issue of Article III standing. Carpenter has standing to assert claims under California law. Another state's law might be similar to California law, but that similarity does not result in Carpenter having standing to sue under the other state's law as well.

Court's view, stand for the proposition that this Court must delay its consideration of standing in sister state cases until class certification.

*Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019).

In sum, there is no dispute that Carpenter has Article III standing to represent a class of purchasers of Tiny Tales Homes who have claims under California law. The question here is whether Carpenter has standing to assert claims on behalf of unnamed class members under other states' laws that do not govern his own claims. He does not. Therefore, the claims in the FAC on behalf of the "nationwide class," which Carpenter agrees are governed by the laws of the state where each particular class member resides or made her purchase, must be dismissed because Carpenter, the only named plaintiff, lacks Article III standing to assert claims under those other states' laws.

### C. CAFA Subject Matter Jurisdiction

The FAC asserts that this Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Pursuant to CAFA, federal district courts have subject matter jurisdiction over class actions in which a member of the plaintiff class is a citizen of a state different from any defendant and the aggregate matter in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2). On February 11, 2020, the Court ordered the parties to show cause as to whether the amount in controversy in this action exceeds $5,000,000. [Doc. No. 23.]

Both parties responded to the order. Carpenter, who has the burden of demonstrating subject matter jurisdiction and alleged in the FAC that the amount in controversy exceeds $5,000,000, conceded that he has no support for his allegation as to the amount in controversy. [Doc. No. 25.] PetSmart, meanwhile, submitted a declaration from its Senior Category Buyer stating that PetSmart has sold over $5,000,000 in Tiny Tales Homes, including Transport Tubes and Connectors, in the United States since launching the products in 2018. [Doc. No. 26-1.] The Court is satisfied that this evidence was sufficient to demonstrate subject matter jurisdiction under CAFA over a nationwide class action, assuming that the Court has jurisdiction over such an action.

However, because the Court is dismissing the nationwide class claims for lack of personal jurisdiction and lack of standing, Plaintiff cannot rely on the damages attributable to those non-California class claims to satisfy CAFA's $5,000,000 amount in controversy requirement. *Cf. Harris v. CVS Pharmacy, Inc.*, No. ED CV 13-2329-AB (AGRx), 2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) (holding that the plaintiff could not rely on claims for which he lacked standing to satisfy CAFA's amount in controversy requirement). If the matter in controversy with respect to the California class alone exceeds $5,000,000, this is not an issue. However, if the matter in controversy for the California class alone does not exceed $5,000,000, the Court lacks CAFA jurisdiction and must dismiss this complaint in its entirety. Accordingly, as stated below, the Court seeks further briefing on this issue.

## IV. Disposition

For all of the foregoing reasons, the Court finds that Carpenter lacks standing to assert claims under non-California laws, and that the Court lacks personal jurisdiction over PetSmart for any claims of unnamed class members under other states' laws and based on purchases that occurred outside of California. Accordingly, the motion to strike claims related to a nationwide class action is **GRANTED**, and the allegations of a nationwide class are **STRICKEN**. The parties are **ORDERED** to **SHOW CAUSE**, on or before **March 16, 2020**, why this Court has subject matter jurisdiction notwithstanding the elimination of the nationwide class claims. Failure to respond will result in dismissal of the complaint without prejudice to Carpenter re-filing a California class action in state court.

It is **SO ORDERED**.

Dated: March 2, 2020

Hon. Cathy Ann Bencivengo
United States District Judge